# George M. McAlevy et al., Plffs. in Err., *v.* W. W. H. McElroy.

Where the question is whether or not a sale of personal property was followed by such a change of possession as rendered the sale valid as against creditors of the vendor, proof that after the sale the vendor, who was lessee of the premises on which the property was kept, surrendered his lease to the owner of the premises, and that thereupon the vendee made an arrangement with the owner of the premises by which the property continued to be kept there, is pertinent for the purpose of establishing the vendee's exclusive possession of the property.

(Argued April 20, 1888.   Decided May 14, 1888.)

January Term, 1888, No. 374, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.   Error to the Common Pleas of Huntingdon County to review a judgment in favor of the plaintiff in an action of trespass, September Term, 1885, No. 12.   Affirmed.

The nature of the case and the facts are fully stated in the charge of the court below, FURST, P. J., which was as follows:
This is an action of trespass brought by W. W. H. McElroy, plaintiff, against George M. McAlevy and Abram Piper, defendants, to recover damages for the selling of certain personal property which the plaintiff alleges belonged to him.

From the evidence it appears that Abram Piper, one of the defendants, held a judgment against B. S. and D. S. Rumberger, entered in the court of common pleas of this county, for the sum of $350, with interest and costs; that on this judgment he issued an execution in 1884, upon which nothing was realized to satisfy the judgment; and on the 7th of April, 1885, he issued an alias execution, that is a second writ on this same judgment, and levied on a brown mare, buggy, harness, robes, and blank-

NOTE.—For the necessity of change of possession of personalty sold, see note to Chase v. Garrett, 1 Sad. Rep. 16.

ets, and claimed this property to be the property of Rumberger Brothers, or either of them, and sold it on the 23d of May, 1885, as the property of B. S. Rumberger, at which time notice was given him that the property did not belong to Rumberger, but that it belonged to W. W. H. McElroy, this plaintiff. This is the alleged trespass in this case.

Mr. McElroy has sued the sheriff, and Mr. Piper, the execution creditor, for damages for the value of that property. Now the vital question for you to determine is, first, whether Mr. McElroy owned this property. If Mr. McElroy was not the owner of this property as against creditors, then clearly your verdict must be for the defendants. It is shown, and not disputed, that the Rumbergers were engaged in the mercantile business in Petersburg, in this county, and in the fall of 1883 they became insolvent and unable to pay their debts. Judgments were entered against them and executions were issued, and the store of Rumberger Brothers (the firm being composed of two brothers, B. S. and D. S. Rumberger), was levied upon and sold by the sheriff at a sale on the 27th of March, 1884. This sale was at Petersburg; and it was a sale of all the property of the firm, consisting of all their merchandise, goods, household furniture, and personal property.

At the time of this sale the Rumberger Brothers seem to have had a store room in their own right, and another leased from the Myton heirs; they also had a ware house and stable leased from the Myton heirs, so that they were lessees under the Myton heirs of all the property in their possession, except one of the store rooms, which they held in their own right, and which afterwards was sold, or passed out of their possession. After this sheriff's sale, in March, 1884, the plaintiff in this issue, Mr. McElroy, claims that Mr. Rumberger, on behalf of the firm, went to the Myton heirs and notified them that they could no longer pay the rent on that property which was under lease from them, and surrendered up the agreement with the Myton heirs; surrendered up possession of the leased property, and that the Myton heirs accepted the proposition to terminate the lease in that way, so that after the sheriff's sale, so far as the Rumbergers were concerned, possession of the property was transferred back to the Myton heirs.

The plaintiff further alleges that on the 25th day of October, 1883, he purchased this brown mare at private sale from B. S.

Rumberger, who was its owner, and that on the 6th day of March, 1884, he purchased the buggy, harness, blankets, and robes from him for $72, the entire contract price being $232, $160 for the mare, $72 for buggy, harness, robes, and blankets; that when he purchased this mare on the 25th of October, he gave his check for $125 on account of it, and when he purchased the other personal property in dispute he gave a check for $50 on account of it, and that he subsequently paid the balance due Mr. Rumberger on this sale.

The plaintiff further alleges that he purchased this property openly, fairly, and honestly, that it was a bona fide purchase; that after he purchased it, being in the employ of Eichelberger, who was the successor of the Rumberger Brothers, he went to the Myton heirs and made an arrangement with them by which he might keep this property in the stable or building leased from the Myton heirs, and by an arrangement with them it was so agreed that he might have possession of the property for that purpose.

The defendants in this issue deny, first, that there was any sale of this personal property to Mr. McElroy, and that even though there was a sale of it by Rumberger to McElroy there was not such possession given of the property as would make a valid sale as against creditors of the Rumberger Brothers.

There are two vital questions in the case for you to determine: the first question is whether there was a sale made by B. S. Rumberger to W. W. H. McElroy of the mare, buggy, harness, etc. You have the testimony on the one side and upon the other on that question. The court will not discuss it in detail. It has been exhaustively discussed by counsel of the respective sides.

The defendants deny the bona fides of this transaction, claiming it was collusive and fraudulent between B. S. Rumberger and W. W. H. McElroy (who are brothers-in-law) intending to hinder, defraud, and delay the creditors of B. S. Rumberger. or in other words, that it was fraudulent and collusive as to the creditors of B. S. Rumberger. The plaintiff in the issue contends it was an honest and bona fide sale. This is the first question for you to determine—whether or not the sale of this property by B. S. Rumberger to W. W. H. McElroy was a bona fide sale of the property. If it were, then you will come to the consideration of the possession of the property. If, on the other

hand, you find from the weight of the evidence it was not a bona fide sale—in other words, that it was meant and intended by these parties to secrete the property and prevent it from falling into the hands of creditors of B. S. Rumberger, then you need inquire no further and your verdict should be for the defendants. If, however, after you carefully weigh the evidence, you are satisfied that the personal property was sold by Mr. Rumberger to Mr. McElroy, honestly and fairly [then the next question you have to determine is whether or not possession of this property was given by Mr. Rumberger to Mr. McElroy.] 1

The law is very clearly settled as to private sales of goods and chattels by one person to another; that the possession of the property must be delivered to the vendee where the property is capable and susceptible of delivery; where the evidence upon the subject is uncontradicted, the question of the delivery of possession is one of law for the court, but where there is conflicting testimony with regard to the delivery of possession, the question is one of fact for the jury under the evidence in the case. Where the sale of personal property, reasonably susceptible of delivery, is not accompanied by a transfer of the actual possession, although valid and binding as between the parties, it is a fraud *per se* as to creditors, and bona fide subsequent purchasers without regard to the interest of the parties; and the question, where the facts are established, is for the court, and not for the jury. In the sale of personal property regard must be had, not only to the character of the property, but to the nature of the transaction, the position of the parties, and the intended use of the property. [No such change of possession as will defeat the fair and honest object of the parties is required.] [2] But where the evidence is conflicting as to the possession, instead of it being a question of law for the court, it becomes a question of fact for the jury to determine under all of the evidence in the case.

If, therefore, you find that the sale was made in good faith, as we have before instructed you, then your second question is as to the possession, whether possession was delivered by Mr. Rumberger to Mr. McElroy of this property and with regard to the delivery of that possession we say to you this: if you find from the evidence that Mr. Rumberger, after the sheriff's sale in 1884 of all their property, closing out their business, [if Mr.

Rumberger went to the Myton heirs and made a parol—that is a verbal surrender of the leasehold property of the Myton heirs, and it was accepted by them, then Mr. McElroy would have the right to make arrangements with the Myton heirs to keep this property in the stable or in the wareroom or wherever he saw fit to keep it upon the leased premises, and that would be such a possession as would protect Mr. McElroy in his purchase;] . [3] but if from all the evidence you are satisfied that no such arrangement was made, or that there was no surrender of the leased premises to the Myton heirs, but that the possession continued subsequent to the sheriff's sale, and subsequent to the purchase of this property by Mr. McElroy, as it did before, then the possession by McElroy would be fraudulent in law and he could not recover, because the possession of the vendee must not be a concurrent possession with his vendor, but it must be exclusive and absolute possession of the property which is susceptible of delivery, such as this property was.

In order to be clearly understood on this point of the case, I will repeat it, because this is the vital question in the case, if you should come to that branch of it. [If you find from the evidence that Rumberger surrendered the lease which was accepted by the Myton heirs, and that McElroy made arrangements with the Myton heirs by which he might share and keep his property there in that leased premises, he had such possession as would protect his title, if you find that he was the real owner or bona fide purchaser of it.] 4

Now upon the question of the purchase of the property you have the subsequent dealings of these parties, their conversations, and their acts of ownership, and their conduct, all that going upon the premises as to whether or not a contract was made between them; you have the testimony with regard to the surrender of the lease and the arrangement made by McElroy for the continuance of it so that he might retain possession of it; that he might keep his property there, in connection with the fact that he continued on as clerk with the successor of Rumberger at the same place and in the same building. If you find, therefore, that the contract was good and valid and that there was such possession, then you must consider the amount of damages the plaintiff has sustained for the sale of his property. You have the price that the plaintiff claims to have paid' for this property, if you believe the testimony; you have the

price that it sold for at sheriff's sale, and from all of it you must gather what was its reasonable market value on the 23d of May, 1885, when it was seized and sold by the sheriff upon an execution of Mr. Piper. That amount, with interest from that time to this, would be the measure of the plaintiff's damages. If you find, therefore, that the plaintiff is entitled to recover, that would be the measure of his damages. If you find that he is not entitled to recover, your verdict would be generally for the defendant.

To which charge and opinion of the court, counsel for plaintiff and defendants except before verdict, and pray that the same be reduced to writing and filed of record, a bill of exceptions thereto sealed, which now, this 23d of February, 1888, is accordingly done.

Verdict and judgment were for plaintiff.

The assignments of error specified: (1–4) The portions of the charge in brackets; and (5) the action of the court in not saying that there was not a sufficient delivery of the property as against creditors, and in not directing a verdict for defendants.

*George B. Orlady,* for plaintiffs in error.—Where the question is whether a sale of chattels was fraudulent as to creditors, for want of a change of possession, it is the duty of the court to instruct the jury as to the nature and effect of legal fraud; and not leave it to them to decide whether the sale was fraudulent or not, as the greatest amount of difficulty in many cases of this class arises from the description or kind of possession accompanying and following the alleged transfer. Cadbury v. Nolen, 5 Pa. 320.

Not a word was said by the court of what the law regards as clear and exclusive possession as required.

The court is not bound to submit a question to the jury on insufficient evidence. The doctrine that where there is a scintilla of evidence, it must be submitted to the jury, is exploded. Howard Exp. Co. v. Wile, 64 Pa. 201; Brawn v. Keller, 43 Pa. 104, 82 Am. Dec. 554; Elliott v. Lycoming County Mut. Ins. Co. 66 Pa. 22, 5 Am. Rep. 323; Cunningham v. Smith, 70 Pa. 450; De Haven's Appeal, 75 Pa. 337.

If it is a fraud in law, without regard to the intent of the

parties, it becomes a question for the court and not for the jury. Young v. M'Clure, 2 Watts & S. 147, and cases therein cited.

The most that can be claimed of this delivery, if any ever was had, was merely symbolical and constructive. The lease surrendered and a new arrangement made, the mare, buggy, etc., not in view, is not sufficient, unless, as is said in Babb v. Celmson, 10 Serg. & R. 419, 13 Am. Dec. 684, the court are prepared to unsay and unsettle all that was said and settled in Clow v. Woods, 5 Serg. & R. 275, 9 Am. Dec. 346.

The same rule is observed in Buckley v. Duff, 114 Pa. 596, 8 Atl. 188, where the distinction is strongly made in favor of antecedent creditors, without modifying the requirements necessary to a legal sale. Abram Piper was an antecedent creditor of Rumberger; and as against him this sale may not have the taint of actual fraud, and yet have the invalidity of legal fraud, although perfectly bona fide, as in Cadbury v. Nolen, 5 Pa. 320.

As in that case, so in this one, there was not that visible, open change of possession which the law requires, and it was the duty of the court to so instruct the jury, because in such cases the court must judge as to those acts which are sufficient evidence of delivery. Clow v. Woods, 5 Serg. & R. 275, 9 Am. Dec. 346; Streeper v. Eckart, 2 Whart. 302, 30 Am. Dec. 258; Carpenter v. Mayer, 5 Watts, 483; Avery v. Street, 6 Watts, 247.

*H. H. Waite* and *R. M. Speer,* for defendant in error.—The landlords had a right to accept a surrender of the leased premises, and when they did it, the possession of the surrendered premises revested in them. M'Kinney v. Reader, 7 Watts, 123; Greider's Appeal, 5 Pa. 424; Kiester v. Miller, 25 Pa. 481.

If the purchase was in good faith, and for a valuable consideration, a change of location is not essential. Crawford v. Davis, 99 Pa. 576.

No such change as will defeat the fair and honest object of the parties is required. McClure v. Forney, 107 Pa. 414.

A removal from, or surrender of, the premises by the former owner or occupant, is as effectual to change the possession as a removal of the property itself. It is not the place the property occupies that gives color of possession to the vendor, but

the connection the place has with the vendor. Barr v. Reitz, 53 Pa. 256.

It is not necessary that separation of the property from the possession of the vendor should be immediate. Smith v. Stern, 17 Pa. 360; McMarlan v. English, 74 Pa. 296; Long v. Knapp, 54 Pa. 514–516.

Such possession in the vendee as shown here could be affected only by actual fraud. Boud v. Bronson, 80 Pa. 360; Graham v. McCreary, 40 Pa. 515, 80 Am. Dec. 591.

If the transaction is not fraudulent *per se,* the party alleging fraud must prove it to the satisfaction of the court and jury— and a sale of property in the hands of a bailee does not require a change of possession. Roberts v. Guernsey, 3 Grant, Cas. 237; Linton v. Butz, 7 Pa. 89, 47 Am. Dec. 501; Woods v. Hull, 81* Pa. 451. See also Sutton v. Shearer, 1 Grant, Cas. 207; Forsyth v. Matthews, 14 Pa. 100, 52 Am. Dec. 522; Dunlap v. Bournonville, 26 Pa. 72; McVicker v. May, 3 Pa. St. 224, 45 Am. Dec. 637; Hugus v. Robinson, 24 Pa. 9.

In the absence of legal fraud it is the intent with which the sale or transfer is made, and not its tendency and effect, that gives character to the transaction and stamps it as honest or fraudulent. Bentz v. Rockey, 69 Pa. 71; Covanhovan v. Hart, 21 Pa. 495, 60 Am. Dec. 57.

A jury is not at liberty to deduce fraud from that which the law pronounces honest. York County Bank v. Carter, 38 Pa. 454, 80 Am. Dec. 494.

The law requires only such change of possession as the character of the property, the nature of the transaction, the situation and relation of the parties, the surrounding circumstances, and the uses for which the property is intended, will reasonably admit of. Pearson v. Carter, 94 Pa. 157; Sheldon v. Sharpless, 2 W. N. C. 311; Cessna v. Nimick, 113 Pa. 70, 4 Atl. 193.


Per Curiam:

We cannot see how the court below could have done otherwise than submit the facts of this contention to the jury. The withdrawal of the vendor from the possession of the goods, and the claim of right in the property, and the exercise of ownership over it by the vendee, were certainly facts for the consideration of that body. To this end proof of the surrender by Rumberger of his lease with the Myton heirs and the arrangement between

McElroy and them to keep his property on their premises were pertinent for the purpose of establishing his exclusive possession of the goods in controversy.

The judgment is affirmed.